MARTIN VERY, APPELLANT, *v.* JONAS LEVY.

In equity, where a creditor agrees to receive specific articles in satisfaction of a debt, even although it be a debt upon bond, secured by mortgage, he will be held to the performance of his agreement.

But, in order to bring a case within this principle, there must be, —

. 1. An agreement not inequitable in its terms and effect.

2. A valuable consideration for such agreement.

3. A readiness to perform, and the absence of laches, on the part of the debtor.

Where the agreement to receive payment in goods was made by a person who acted under a power of attorney from the creditor, authorizing him to trade, sell, and dispose of notes, bills, bonds, or mortgages, and, under this power, a partial payment was received in goods, which was afterwards recognized as a payment by the creditor, the power was sufficient to authorize an agreement to receive the remaining amount, also in goods, at any time when called for within twelve months, especially as the bond had yet four years to run.

This agreement was not inequitable; there was a valuable consideration for it; and the debtor was always ready to comply with it, on his part.

The creditor cannot now allege fraud in his debtor. It is not charged in the bill; and, although he may not have known of the agreement when the bill was framed, yet, when the answer came in, he might have amended his bill, and charged fraud.

THIS was an appeal from the Circuit Court of the United States for the District of Arkansas.

In 1841, one Darwin Lindsley owned a lot of land in the town of Little Rock, and State of Arkansas, which was known as lot No. 7, in block or square No. 35, in that part of the city west of the Quapaw line, and known as the Old Town.

On the 3d of March, 1841, he sold this lot to Jonas Levy, who gave two bonds, each for $4,000, one payable five years after date, and the other six years after date. Both were to carry interest, at 7 per cent., payable quarter-yearly. The bond, payable in five years, was not involved in the present suit, and no further notice need be taken of it. Both bonds were secured by a mortgage of the property.

On the 25th of March, 1841, Lindsley assigned the six years' bond to Martin Very, a citizen of the State of Indiana.

This bond had the following credits indorsed upon it :

1841, March 15 . . . . . . -$550.00,
1842, January 29 . . . . . 181.12,
1843, March 3 (in goods) . . . . 1898.25

The last credit was signed Martin Very, by J. S. Davis, and arose in this way :

On the 25th of November, 1842, Davis addressed the following letter to Levy.

NEW ALBANY, Indiana, Nov. 25, 1842.

DEAR SIR, — My object in writing to you, is to inquire what

you will give in cash and jewelry for the last note that you gave to Darwin Lindsley, and which was assigned by him to Martin Very. I have bought a part of the note, and am authorized to make disposition of it, and I thought, as a matter of justice, you should have the refusal of the note, at a considerable discount, if you desired it. Please let me hear from you at your earliest convenience. I write for myself and Mr. Very. I am, respectfully yours, &c.

Mr. Jonas Levy. John S. Davis.

(Indorsed,) — Mr. Jonas Levy, Little Rock, Arkansas.

(Postmarked) — New Albany, Ind., Nov. 26.

On the 28th of January, 1843, Very executed the following power of attorney to Davis:

Know all men, by these presents, that I, Martin Very, of the county of Floyd, and State of Indiana, have made, constituted, and appointed, and do, by these presents, make, ordain, constitute, and appoint, John S. Davis, of the city of New Albany, Indiana, my true and lawful attorney, for me, and in my name, and for my use, to ask, demand, sue for, recover, and receive, all such sum or sums of money, notes, bills, bonds, mortgages, or debts, which are or shall be due, owing, or belonging to me, in any manner, or by any means whatsoever; and I hereby give my said attorney full power and authority to trade, sell, and dispose of any notes, bills, bonds, or mortgages, held or owned by me, on any resident or residents of the State of Arkansas; and I hereby give my said attorney full power and authority, in and about the premises, to have, use, and take all lawful ways and means, in my name, for the purposes aforesaid; and, upon the receipt of such debts, dues, or sums of money, to make, seal, and deliver, acquittances and other sufficient discharges for me, and in my name, or, upon the sale of any bill, bond, note, or mortgage, to execute a good and sufficient assignment of the same to the purchaser thereof, for me, and in my name; and, generally, to do and perform, in my name, all other acts and things necessary to be done and performed in and about the premises, as fully and amply, to all intents and purposes, as I myself could or might do, if personally present; and attorneys, one or more, under him, for the purpose aforesaid, to make and constitute, and again at pleasure revoke. And I hereby ratify and confirm all and whatsoever my said attorney shall lawfully do, in my name, in and about the premises, by virtue of these presents; and I hereby make this power of attorney irrevocable, to all intents and purposes. In testimony whereof, I have here-

unto set my hand, and seal, this, the 28th day of January, in the year of our Lord 1843.    MARTIN VERY.    [SEAL.]
   Signed, sealed, and delivered in presence of
                                            Jos. P. H. THORNTON.

   Under this power, Davis went to Little Rock, and, on the 3d of March, 1843, put the receipt above mentioned upon the back of the bond for $1,898.25, paid in goods; and, on the same day, executed the following paper, viz. :

                                            LITTLE ROCK, March 3d, '43.
   I hereby agree to take in goods, such as jewelry, &c., the balance due me on a note assigned by D. Lindsley to me, as also a mortgage assigned by the said Lindsley; said goods to be delivered to me, or any agent at Little Rock, Arkansas, at reasonable prices, at said Little Rock; said goods to be called for within twelve months from this time.    MARTIN VERY.
                                    By J. S. DAVIS,
                                            Attorney in fact.

   Davis stated in his deposition that, in January, 1844, he wrote to Levy, directing him to pay the balance, in jewelry, watches, &c. to Mr. Waring, in Little Rock; that he received an answer from Levy, declining to do so; but that he had lost or mislaid this answer from Levy.
   On the 3d of February, 1844, Davis wrote to Levy the following letter :

                                    NEW ALBANY, Feb. 3, 1844.
   DEAR SIR, — If you can pay the balance of your note in good silver or gold watches, and good jewelry, at fair prices, say about half of each, or two thirds watches, you will please notify me of the fact by return of mail, and I will send on for them at once.   The things you let me have before were too high, — at least Mr. Very says so.   Let me hear from you.   I am your friend,                                    JOHN H. DAVIS.
   MR. J. LEVY.
   (Postmark) — New Albany, Ind., Feb. 5.
   (Indorsed) — MR. JONAS LEVY, Jeweller, Little Rock, Ark.

   In April, 1848, Very filed his bill in the Circuit Court of the United States for the District of Arkansas against Levy, for the purpose of foreclosing the mortgage.   The answer of Levy admitted all the allegations of the bill, but set up as a defence the execution of the power of attorney by Very to Davis, and the subsequent agreement between Davis and himself, by which

the goods were to be called for within twelve months. It was then alleged, that not only during the next twelve months, but always afterwards, Levy had kept on hand goods enough of the proper character to pay the balance due, been always ready and still was ready to deliver them, and had often urged the complainant to receive and accept them, and would deposit them in the custody of any one directed by the court.

Levy brought into court a large quantity of goods and jewelry, which was placed in the hands of a receiver.

· The case being heard on bill, amendment, answers, replications, exhibits, and testimony, the court held Very bound by the agreement, and found that Levy had always had sufficient goods on hand ready to be delivered; and directed the master to ascertain the balance due on the bond, and the value of the goods delivered to the receiver.

The master reported the balance due on the 3d March, 1844, to be $2,002.59, and the value of the goods, $5,776.99. No exception was taken to the report, and it was confirmed.

The court then ordered the complainant to select out of the goods, to the amount of $2,002.59, and on his failure, after notice to his solicitor, that the master should do so. The complainant failed to select; the master set apart the requisite amount, the residue were redelivered to Levy, and the court decreed that Very should receive the goods so set apart by the master, and that the bond and mortgage were satisfied; denied the relief prayed, and dismissed the bill; all costs to be paid by the complainant.

Very appealed to this court. It was argued by *Mr. Sebastian*, for the appellant, and by *Mr. Lawrence*, for the appellee, on whose side there was also a brief filed by *Mr. Pike.*

*Mr. Sebastian*, for appellant.

Much irrelevant matter is drawn into the case, which it is not my purpose to notice; and except the points noticed below, the whole defence fails, upon the well-settled principle that matters set up in an answer by way of avoidance avail nothing unless proved. 1 Munf. Rep. 373; 1 Johns. Rep. 590; 14 Id. 74; 4 Paige, 33; Cathcart *v.* Robinson, 5 Pet. Rep. 267; United States Bank *v.* Beverley, 1 How. U. S. Rep. 151.

Under the power given to Davis, he had authority, as is contended for Very, only to receive the amount of the bond and mortgage in money, or to sell and transfer them, and no other authority whatever to agree to receive at a future day a payment in goods, and to bind his principal so to receive them, — no authority to substitute a new contract, by which Very must

necessarily be a loser, and bind Very to its performance. From the pleadings and evidence, it is clear that Davis did not receive payment, in money or otherwise. Is it not equally clear that he did not sell and transfer the bond and mortgage? And in what part of the power can the authority be found for Davis to bind Very by a new contract, to be performed in future? The whole object of the power was to close up and put an end to his business in Arkansas, and not to entangle himself with new contracts, liabilities, and litigation, and which has been the result of the unwarrantable construction put on the power by Levy, and the unauthorized acts of Davis under it.

And it is a well-settled principle of law, and nowhere controverted, that if an agent exceed his authority his acts in such excess do not bind his principal. Taggart v. Stanbery, 2 McLean's Rep. 549; Planters Bank v. Cameron et al., 3 Smed. & Marsh. Rep. 613; Gordon v. Buchanan, 5 Yerg. Rep. 79; 2 Kent's Com. (1st ed.) 483; 3 Eng. (Ark.) Rep. 230; Wahrendorff v. Whitaker, 1 Missouri Rep. 148; 3 Stew. (Ala.) Rep. 26, 27; Fox v. Fisk, 6 How. (Miss.) Rep. 345; Fenn v. Harrison, 3 Term Rep. 759; Stewart v. Donnelly, 4 Yerg. Rep. 180; Thompson v. Stewart, 3 Conn. Rep. 183; 1 Hovenden on Frauds, 180; North River Bank v. Aymar, 3 Hill's (N. York) Rep. 266; Piatt v. Oliver, 2 McLean's C. C. R. 316; Story on Agency, § 165, 172.

This was a special authority to Davis, and not a general one, and Levy was bound to know the extent of his authority; and if that authority was exceeded, Levy must be the loser by the unauthorized act, and not Very, who gave not the authority. 2 Kent's Com. (original ed.) 484; Payne v. Stone, 7 Smedes & Marsh. Rep. 373; Gullett v. Lewis, 3 Stewart's (Ala.) Rep. 26, 27; 1 Hovenden on Frauds, 179, 181; 3 Hill's Rep. 266; Owings v. Hull, 9 Pet. Rep. 628; Story on Agency, § 72, 73, 81, 165; Story on Contracts, § 284; Denning v. Smith, 3 Johns. Ch. Rep. 344.

And a special power must be strictly pursued, and cannot be enlarged. Batty v. Carswell, 2 Johns. Rep. 50; Mayor, &c. of Little Rock v. The State Bank, 3 Eng. (Ark.) Rep. 230; 2 Kent's Com. (1st ed.) 484; Dickenson v. Gilliland, 1 Cow. Rep. 498; Nixon v. Hyserott, 5 Johns. Rep. 59; Story on Agency, § 165.

And although Davis's power should be esteemed, in technical parlance, as a general agency, yet the act performed under it must have reference to, and be limited by, "the purpose for which the power was given:" And the purpose in this case, as is clearly shown by the power itself, was not to make new obligations to be performed by himself, but to receive payment and

close up finally those due to him from others.   See 3 Smed. & Marsh. Rep. 613; Story on Agency, § 21, 62–69, 83, 89; 6 How. (Miss.) Rep. 345; 4 Yerg. Rep. 180; Mechanics Bank *v.* Bank of Columbia, 5 Wheat. Rep. 337; Story on Contracts, § 287.

And even in such case the act performed must appear to have been a necessary means of carrying into effect the power granted by the principal.   And could the new contract made by Davis be deemed a legitimate and necessary means of receiving payment in money, or of effecting a sale of the securities?   Surely not.   See 3 Sm. & Marsh. Rep. 613; Story on Agency, § 62–69, 83; 5 Johns. Rep. 59.

Here, too, a special power of attorney was given in writing, and such powers are subjected to a "strict interpretation." Story on Agency, § 68, 69; Story on Contracts, § 287.

A factor is a general agent, yet he cannot bind his principal to sales on credit, or to any mode of payment other than the receipt of the money at the sale, unless there be a general usage established controlling such agency.   2 Kent's Com. (1st ed.) 485, 486.

And any general agent to receive payment of a debt is bound to receive it in money only, unless otherwise directed.   Martin's Adm. *v.* The United States, 2 Monroe's Rep. 90; 4 Yerg. Rep. 180; 6 How. (Miss.) Rep. 345; 3 Stewart's (Ala.) Rep. 27; Story on Agency, § 62, 98, 99, 181; Story on Contracts, § 299.

And the power to sell and transfer could surely not authorize the compromitment of Very's rights, by any species of contract whatever not embraced in the letter, spirit, or meaning of the terms used in the power.   Clarke's Lessee *v.* Courtney, 5 Pet. Rep. 347; 5 Johns. Rep. 59; Story on Agency, § 62–69, 89; Williamson *v.* Berry, 8 How. U. S. Rep. 544.

And the opinion of Davis as to the extent of his powers under the agency, and that he was authorized to bind Very by this new contract with Levy, cannot aid the latter, nor is it any evidence of Davis's authority to make it.   Clark's Ex'ors *v.* Van Reimsdyk, 9 Cranch's Rep. 158; Garvin *v.* Lowry, 7 Smed. & Marsh. Rep. 27; 5 Wheat. Rep. 337.

The act of Davis's agreeing to receive goods in payment was never ratified by Very; nor can such ratification be presumed, because the evidence of Davis himself, invoked by Levy, shows that Very knew not of the existence of such a contract, and that the payment in goods, indorsed on the bond, was no part of the contract to receive other goods, in future.   And an acquiescence in receiving the goods already paid cannot be tortured into a ratification of an unauthorized act of a faithless agent to receive others in future, and of which the principal had no knowledge.

Very v. Levy.

For the ratification of such an act, whether in fact or presumed, could not be binding on Very, without a full knowledge of its existence and of all the circumstances under which it was made.    Lyon v. Tams & Co., 6 Eng. (Ark.) Rep. 205; Cairnes v. Bleeker, 12 Johns. Rep. 305; 2 Kent's Com. (4th ed.) 616; 2 Stark. Ev. (7th Am. ed.) 43, notes A, B; Armstrong v. Gilchrist, 2 Johns. Cas. 430, note A; 7 Smed. & Marsh. Rep. 27; Owings v. Hull, 9 Pet. Rep. 629; Story on Agency, § 90, 239, 242, et seq.

Besides, even were it in law true, which is denied, that Davis had authority to bind Very by the new contract entered into with Levy, yet from the evidence of Davis himself, who is Levy's own witness, such contract was obtained by the false pretences and fraud of Levy himself, both by the suppression of truth and utterance of falsehood, and could not be binding either upon Davis or Very, in law or equity.    For fraud vitiates and renders void all contracts into which it enters.    See Story on Contracts, § 165, 167, et seq., 177, et seq., 542, et seq.; Roberts on Frauds, (Philadelphia ed. of 1807,) 521; 2 Saund. Pl. & Ev. 527, 528; Anderson v. Lewis, 1 Freeman's Ch. Rep. 206; Bell v. Hill, 1 Hayw. Rep. 95; Reigal v. Wood, 1 Johns. Ch. Rep. 406; Stoddard v. Chambers, 2 How. U. S. Rep. 318; Barnesley v. Powell, 1 Ves. 120; Pope v. Anderson, 1 Smed. & Marsh. Ch. Rep. 156.

Levy's entire defence rests on this unauthorized contract made by Davis; and a contract too which the only evidence (that of Davies) establishing its existence, proves conclusively to have been obtained by fraud.    And will a court of equity, under such circumstances, enforce it?

The counsel for the appellee made the following points.

Point 1.  The arrangement made by Davis was warranted by the letter of attorney, regarding that in connection with, and explaining it by, the other facts in the case.

The debt was not due within about three years.    All the interest accrued was overpaid.    Levy was looked upon as insolvent, and the mortgaged property not worth the debt.

The power of attorney not only authorized Davis to collect and receipt for money due Very, but to sell, trade, and dispose of the bond and mortgage in question, and to assign the same. Davis's testimony shows that this power, though general in its terms as to any and all debts, was really intended to apply only to this identical debt.    It is very evident that the real object of the power was to enable Davis to dispose of the claim, or make some kind of compromise or arrangement by which it might be closed up at once.    The letter of Davis himself shows that it

had already been in contemplation to allow Levy to pay the debt in goods, and that it was thought to be only just to give him the refusal, in offering the claim for sale, and he was applied to accordingly.

When this was done, Davis owned part of the claim. He says in his testimony that such was the case, but that when he made the arrangement he no longer had an interest. He did not tell Levy that. And if he no longer had an interest in the claim, why was the power of attorney expressly declared to be irrevocable ?

In considering whether the arrangement made by Davis was within the power conferred, it is legitimate to consider whether a proposal to receive payment in goods at a fair price was an unusual or extraordinary inducement to be held out in order to procure purchasers for a debt not due within three years; whether Very could have imagined that such a claim could be disposed of, traded, or sold, without some discount or change of the mode of payment ; whether it was to be expected that Levy would pay the whole debt in money at that time.

Davis had a general power given him to sell, trade, or dispose of the claim. He was not limited as to the person to whom he should sell, or the mode in which the price should be paid. No one can doubt that if he had sold it to a third person for goods or jewelry, part paid at once, and part to be paid in twelve months, the sale would have been within the power, for surely there is no warrant to say that an unqualified power to sell a debt limits the agent to sell for cash.

And as there was no restriction as to the person, it was quite as competent to him to sell to Levy as to any one else. It was natural to expect that Levy would give more than any one else.

Again, how was the power to collect to be exercised, except by a compromise of some kind. The debt was not due, and could not be collected by law. It could only be collected by the consent of Levy, a consent not to be expected without any consideration. Taking the whole language of the power together, it is obvious that Very meant to dispose of the claim in some way to some person, and the previous letter of Davis shows that the object was to dispose of it to Levy for goods, at a discount.

All grants of power are to be construed liberally, so as to meet the ends and purposes of the parties. Kenworthy *v.* Bate, 6 Ves. 793 ; Nicolet *v.* Pillot, 24 Wend. 240 ; North River Bank *v.* Rogers, 22 Id. 649 ; McMorris *v.* Simpson, 21 Wend. 612.

For the general rules as to the construction of powers, we need refer only to 2 Sugden on Pow. c. 8, 9, 18 ; 22 Wend 651 ; 1 Wash. C. C. R. 457.

In Parsons *v.* Administrators of Gaylord, (3 J. R. 463,) C gave his bond to B ; on payment of which B was to convey land to him. B delivered the bond to F with authority to receive payment ; F took a note in payment of it. Held that his agency authorized this, and B's subsequent dissent made no difference, but the bond was extinguished.

The extent of a power given to an agent is deducible as well from facts as from express obligation. In the estimate of such facts, the law has regard to public security, and often applies the rule that he who trusts must pay. Parsons *v.* Armor & Oakly, 3 Pet. 428.

In law, however it may be in words or technical language, there is no difference between a general agency, so far as the principal is concerned, when considering what acts bind him, and an agency giving the agent general and unlimited power to do any particular act or transact any particular business, without pointing out the mode of doing the act. Story on Agency, sects. 17, 18, 127, V. 1, 128, 129, 133 ; Andrews *v.* Kneeland, 6 Cow. 354 ; Jeffrey *v.* Bigelow, 13 Wend. 518 ; Planters Bank *v.* Cameron, et al. 3 S. & M. 613 ; 2 Kent, 617, 620 ; Sandford *v.* Handy, 23 Wend. 266 ; Le Roy *v.* Beard, 8 How. S. C. R. 466 ; Anderson *v.* Cowley, 21 Wend. 279.

In either case, all the incidents necessary to effectuate the objects of the power are implied and go with it. A power shall be construed as a plain man would understand it. Withington *v.* Herring, 5 Bing. 442.

*Point* 2. Even if the acts of Davis were originally an excess of power, they were so acquiesced in and ratified by Very, that he was ever after estopped to repudiate the agreement.

Undoubtedly so far as goods were actually received, it was a good payment. Notice to the agent is notice to the principal ; and if Very had any ground to complain that his agent had acted in bad faith, or transcended his authority ; if he meant not to abide by the contract made by him, good faith required that he should at once notify Levy of that determination. There is no pretense that he did so, or that he was at all dissatisfied. So far as the goods were received, he accepted them. That appears in the bill itself.

Suppose Levy had, during the year, delivered the residue of the goods, could Very then have repudiated the acts of his agent ? And if that agent had authority to receive goods in payment, had he not authority to agree and contract to secure them ?

In his bill of complaint, Very expressly states, as one of the payments made on the bond, the sum of $1,898.25, without explanation or qualification, and exhibits the bond, with the

30 *

indorsement, " Received on the within, in goods, the sum of eighteen hundred and ninety-eight dollars and twenty-five cents, March 3, 1843, Martin Very, by J. S. Davis." This is an explicit admission that he received the goods, an admission that it was a valid payment, and an admission either of an original authority in Davis to receive pay in goods, or of a ratification by Very of his act in receiving them.

How can he profit by the act of his agent by adopting part of the transaction and repudiating the residue ? Especially how can he do this, when the latter was the price given by his agent for the benefit which he did not object to accept. Le Roy v. Beard, 8 How. 466.

Under the authority given by the power of attorney, and in pursuance of the previous proposition contained in the letter, Davis received nearly two thousand dollars in goods, and agreed in writing to receive the residue within twelve months. Can Very be allowed, after thus inducing Levy to pay, in goods and money, the whole debt to within a little over two thousand dollars, can he be allowed, after thus getting the debt reduced to not much more, if not actually less than the value of the mortgaged property, to enforce it against that property, repudiating the agreement made for him and in his name, by his agent?

And though Davis denies in his testimony that the receipt of the goods actually accepted, and the written agreement to receive the residue in the same way, were concurrent acts and parts of a single transaction, yet his own letter and all the circumstances infallibly demonstrate that this is an utter falsehood, and that Levy paid the amount in goods long before it was due, in consideration of the promise to receive the residue in the same way, or in performance of the very written agreement itself.

On what ground is Very to be allowed to escape from this firm contract, made by his agent in his name, in pursuance of an ample power ? Righter v. Steel et ux. 3 Sandford, Ch. R. 608.

It is perfectly evident that Davis executed the power in entire good faith towards Very. All the circumstances show that he did precisely what was intended to be done; and his statement, that he afterwards wrote to Levy to turn over the residue of the goods to a particular person at Little Rock, makes the proof on this point conclusive, and shows that all that Davis did was ratified.

No weight is due to the statement of Davis that Levy declined turning over the residue of the goods, because it is inconsistent with the undeniable fact that he always retained the

goods, kept them apart, did not expose them to sale, said they were to go in payment of the debt; because the letter is not produced, and was rather too important to be lost, and because the refusal may have been a qualified one, on good grounds, which the letter would show.

*Point* 3. The arrangement so made extinguished the original debt and mortgage.

As was held by the Supreme Court of Arkansas in Levy *v.* Very, above cited, if the agreement of Very, by his agent Davis, had been under seal, it would, together with the payment made in goods, have completely extinguished the original obligation, and been pleadable in bar at law. See also Case *v.* Barber, Sir T. Raym. 450; Thatcher *v.* Dudley et ux. 2 Root, 169; Good *v.* Cheeseman, 2 Barn. & Ad. R. 328; Cartwright, Adm. *v.* Cook, 3 Id. 701; Coie & Woolsey *v.* Houston, 3 Johns. Cas. 243; Boyd *v.* Hitchcock, 20 J. R. 76; Watkinson *v.* Inglesby & Stokes, 5 J. R. 386; Strong *v.* Holmes, 7 Cow. 224; Brooks *v.* White, 2 Met. 283; McCreary *v.* McCreary, 5 Gill & Johns. 147; Downer *v.* Sinclair, 15 Verm. 495.

In a court of equity the technical law rule that a contract can only be dissolved *eo ligamine quo ligatur*, disappears altogether; a rule which originally prevented absolute payment in money, of a bond, being pleaded at law. A court of equity looks through the form to the substance, and an unsealed agreement, the substance being the same, avails there, to precisely the same extent as a sealed one.

And then the principle applies, as established in Pennel's case, 5 Co. 117, that, though payment of a less sum, on the day, in satisfaction of the greater, cannot be a satisfaction of the whole; yet the gift of a horse, or the like, in satisfaction, is good, for it shall be intended that the horse might be more beneficial to the party than the money, or he would not have accepted it in satisfaction.

And where any other articles than money are received, and agreed to be accepted in full satisfaction of a debt, the court will not estimate their value in money's worth, but hold the consideration to be good, and the promise to discharge the entire debt a valid contract. Brooks *v.* White, 2 Metc. 283; Boyd *v.* Hitchcock, 20 J. R. 76; Kellogg *v.* Richards, 14 Wend. 116.

The law of tender has nothing whatever to do with this case. The agreement was, that Very would receive the residue of his debt in goods, "to be called for" within twelve months. No tender was necessary. Levy was only bound to deliver the goods when called on. Of course, his store was the place of delivery. If he kept the goods there, ready to be delivered, and remained always ready, that was enough.

No specified day, and no place, being fixed for the delivery of the residue of the goods, Levy could not be in default until Very had called for the goods, and he had refused to deliver them. His store was the place of delivery. This is well settled. Vance *v.* Bloomer, 20 Wend. 199; La Farge *v.* Rickert, 5 Wend. 187; Robbins *v.* Lute, 4 Mass. 475; Morton *v.* Wells, 1 Tyler, 386; Admrs. of Conn *v.* Ex. of Gano, 1 Ohio, 483; Savary *v.* Goe, 3 Wash. C. C. R. 140; Sheldon *v.* Skinner, 4 Wend. 525; Cranche *v.* Fastolfe, Sir T. Raym, 418; Ranson *v.* Johnson, 1 East, 203; Whitehouse *v.* Frost, 12 Id. 615; Mitchell *v.* Merrill, 2 Blackf. 89; 1 Hill, 523; 2 Hill, 352; Coie *v.* Houston, 3 Johns. Cas. 243.

After the end of the year, Levy held the goods as trustee of Very, and at his risk. 4 Wend. 529; 8 J. R. 478; 3 Johns. Cas. 258. And it made no difference that the goods of Very were mixed with his own, part of a large quantity. Whitehouse *v.* Frost, ubi sup.

As to Davis's testimony in regard to the statements of Levy, on which he was induced to make the arrangement, and their falsehood, it is directly contradicted by his own letter, which shows that the proposition came from himself, and was made to Levy before Davis went to Little Rock, for reasons and from motives wholly different from those stated by him in his deposition.

Mr. Justice CURTIS delivered the opinion of the court.

This is a suit in equity to foreclose a mortgage, commenced in the Circuit Court of the United States for the District of Arkansas. The bill alleges that on the 3d of March, 1841, the respondent, Levy, executed his writing obligatory, for the sum of four thousand dollars, bearing interest at the rate of seven per cent. per annum, payable to Darwin Lindsley in six years after its date, and secured the same by a mortgage on certain premises situated in the city of Little Rock; that by assignment from Lindsley the complainant became the owner of this bond and mortgage on the 25th of March, 1841, and the bill prays for an account and foreclosure.

The answer of Levy admits the execution of a bond and mortgage, and their assignment to the complainant, and avers that on the 3d of March, 1843, he agreed with the complainant, through one John S. Davis, his agent, to deliver goods, such as jewelry, &c., in which the respondent dealt, at Little Rock, upon reasonable prices, in satisfaction of this bond and mortgage, within twelve months from the 3d of March, 1843; that in pursuance of that agreement he did actually deliver on that day a part of the goods, agreed to be of the value of $1,898.25, and

afterwards, on the same day, the complainant, through his agent, Davis, signed and delivered to the respondent a mmorandum in writing as follows :

"Little Rock, March 3d, '43. I hereby agree to take in goods, such as jewelry, &c., the balance due me on a note assigned by D. Lindsley to me, as also a mortgage assigned by said Lindsley; said goods to be delivered to me, or any agent at Little Rock, Arkansas, at reasonable prices at said Little Rock; said goods to be called for within twelve months from this time. Martin Very. By J. S. Davis, Attorney in fact."

That in further pursuance of this agreement, the respondent kept in his hands, and ready for-delivery, and withdrawn from his trade, a sufficient amount of goods, such as are referred to in the memorandum, during the whole year which elapsed after the making of the agreement, and was constantly ready and willing to deliver the same at Little Rock, but the complainant was not there, and did not authorize any one to receive them; that the respondent has ever since been ready and willing to perform his agreement, and offers to bring the goods into court, or place them in the hands of a receiver. The court below appointed a receiver, ascertained the amount of goods necessary to satisfy the unpaid residue of the bond, ordered the receiver, upon demand, to deliver the same to the complainant, in full satisfaction of the bond and mortgage, decreed the mortgage satisfied, and ordered the complainant to pay the costs. From this decree the complainant appealed.

An agreement by a creditor, to receive specific articles in satisfaction of a money debt, is binding on his conscience ; and if he ask the aid of a court of equity to enforce the payment, he can receive that aid only to compel satisfaction in the mode in which he has agreed to accept it. A court of equity will even go further; and in a proper case will enforce the execution of such an agreement. At law, a mere accord is not a defence ; and before breach of a sealed instrument, there is a technical rule, which prevents such an instrument from being discharged, except by matter of as high a nature as the deed itself. Alden *v.* Blague, Cro. Jac. 99 ; Kaye *v.* Waghorne, 1 Taunt. 428; Bayley *v.* Homan, 3 Bin. N. C. 915. But no such difficulties exist in equity. On the broad principle that what has been agreed to be done, shall be considered as done, the court will treat the creditor as if he had acted conscientiously, and accepted in satisfaction what he had agreed to accept, and what it was his own fault only that he had not received. Indeed, even a court of law, in a case free from the technical difficulties above noticed, will do the same thing. Bradly *v.* Gregory, 2 Camp. 383.

In order, however, to bring a case within these principles, three things are necessary. An agreement, not inequitable in its terms and effect; a valuable consideration for such agreement; readiness to perform and the absence of laches on the part of the debtor.

In this case the agreement was in writing, and one objection to it, made by the complainant is, that the person who executed it on his behalf was not authorized to do so. The authority was in writing, and gave the attorney "full power and authority to trade, sell, and dispose of any notes, bills, bonds, or mortgages, held or owned by me, on any resident, or residents of the State of Arkansas." Acting under this power, Davis did actually accept a partial payment in goods, amounting to $1,898.25, and signed the memorandum in writing, which is relied on. The bond being produced, bears the following indorsement:

"Received on the within, in goods, the sum of eighteen hundred and ninety-eight dollars and twenty-five cents, March 3d, 1843. Martin Very. By J. S. Davis."

The complainant, in his bill, treats this as a payment, and it does not appear that he made any objection to it, though Davis says, in one of his letters, he thought the prices were too high.

Upon this state of facts we are of opinion Davis had authority to enter into the agreement in question. Besides the power to collect and sell, is the power to *trade* this bond and mortgage. It might be difficult to attach any general legal signification to this word. But considered in reference to the particular facts of this case we think its meaning sufficiently clear.

It is proved by Davis, that the power, though general in its terms, was given solely in reference to this particular bond and mortgage. The bond had yet four years to run. When, therefore, Davis was authorized to collect this bond, the parties to the letter of attorney must have had in view some agreement respecting its extinguishment, which should vary its original terms of payment; and when he was further empowered to *trade* it, it is not an inadmissible interpretation that the new agreement for its extinguishment, which he was empowered to make, might be an agreement to receive specific articles in payment. It has been said that special powers are to be construed strictly. If by this is meant, that neither the agent, nor a third person dealing with him in that character, can claim under the power any authority which they had not a right to understand its language conveyed, and that the authority is not to be extended by mere general words beyond the object in view, the position is correct. But if the words in question touch only the particular mode in which an object, admitted to be within the

power, is to be effected, and they are ambiguous, and with a a reasonable attention to them would bear the interpretation on which both the agent and a third person have acted, the principal is bound, although upon a more refined and critical examination the court might be of opinion that a different construction would be more correct. Le Roy *v.* Beard, 8 Howard, 451; Loraine *v.* Cartwright, 3 Wash. C. C. R. 151; De Tastett *v.* Crousillat, 2 Wash. C. C. R. 132; 1 Liv. on Agency, 403, 404; Story on Agency, sect. 74. Such an instrument is generally to be construed, as a plain man, acquainted with the object in view, and attending reasonably to the language used, has in fact construed it. He is not bound to take the opinion of a lawyer concerning the meaning of a word not technical, and apparently employed in a popular sense. Witherington *v.* Herring, 5 Bing. 456.

In this case, the complainant, besides empowering Davis to collect a bond not yet payable, has authorized him to *trade* it, — a word frequently used in popular language to signify an exchange of one article for another, by way of barter.

This power was intended by the complainant to be acted on by the respondent, a jeweller, in the State of Arkansas, and we think he cannot complain that it was understood in its popular sense; more especially when he accepted, without objection, goods amounting to $1,898.25, and gave the defendant no notice of his dissent from that construction of the power under which his agent received them, in part payment of the bond.

But it is insisted that, if Davis had authority to receive those goods in part payment, he had not power to enter into an executory agreement to receive the others. This might have presented a question of some difficulty, if the effect of that agreement had been to give a credit to the obligor, or to subject the principal to any risk, or place his claim in any less advantageous position than it would have been in if no contract had been made in reference thereto.

It must be borne in mind, that it is proved by Marcus Dotter and Emanuel Levy, and other witnesses, that the defendant had on hand more than sufficient goods, of the description mentioned, at the time the other goods were delivered and the memorandum signed. By the memorandum, the residue of the goods was to be delivered, at any time within twelve months, when called for by the complainant. The defendant was obliged to keep this amount of these goods constantly on hand, and ready for delivery. He could, therefore, gain nothing by delay. On the other hand, the complainant might have found it more convenient not to take all at one time; the bond bore interest, which was accruing by the delay; and if the defendant,

upon demand, should fail to comply, the bond would remain in force, and no right of the complainant to the money debt, or its security by the mortgage, would be prejudiced.

Under these circumstances, we are of opinion that, as Davis had authority to receive payment in goods, he had also authority to enter into this agreement, having the same object in view, and providing for its accomplishment in a way apparently more beneficial for the creditor than the receipt of all the goods at the time the arrangement was made.

That the agreement itself imports a consideration, deemed by the law valuable, there can be no doubt. An agreement to give a less sum for a greater, if the time of payment be anticipated, is binding; the reason being, as expressed in Pennel's case, (5 Co. R. 117,) that peradventure parcel of the sum, before the day, would be more beneficial than the whole sum on the day. Coke's Lit. 212, b; Com. Dig. Accord, B. 2; Brooks v. White, 2 Met. 283. And when the time of payment is not anticipated, the law deems the delivery of specific articles a good satisfaction of a money debt, because it will intend them to be more valuable than the money to the creditor who has consented to the arrangement. Bac. Ab. Accord, A; Pennel's case, 5 Co. R. 117; Booth v. Smith, 3 Wend. 66; Kellogg v. Richards, 14 Wend. 116; Steinman v. Magnus, 11 East, 390; Lewis v. Jones, 4 B. & C. 513.

In this case, both these rules apply; for the time of payment was to be anticipated, and specific articles delivered.

We consider it also clearly proved, that the defendant has been ready to perform at all times since the agreement was made. It is said by Davis that, in 1844, January, he thinks, he addressed a letter to Levy, requesting him to pay the money coming to Very in jewelry, watches, &c.; and also requested him to put them up, and deliver them to Mr. Waring, in Little Rock; and that Levy declined paying, as requested. That he has searched for Levy's letter, but cannot find it.

It is certainly highly improbable that Levy, who had had these goods on hand, and set apart from his trade, ready for delivery, ever after the agreement was made, should have thus refused to deliver them.

He produces a letter of Davis, which, though it bears date on the 3d of February, 1844, is undoubtedly the letter Davis speaks of, and is as follows:

"New Albany, Feb. 3, 1844. Dear sir,— If you can pay the balance of your note in good silver or gold watches, and good jewelry, at fair prices, say about half of each, or two thirds watches, you will please notify me of the fact by return mail, and I will send on for them at once. The things you let me

have before were too high, at least Mr. Very says so.   Let me hear from you.   I am, your friend.   John S. Davis.   Mr. J. Levy."

It thus appears, Davis was mistaken in supposing he designated a person in Little Rock to receive the goods; and unless it was the purpose of this letter to vary the original understanding of the parties in respect to the proportion of watches to be delivered, it is difficult to see what fair object it could have had.   The testimony of Davis that Levy refused, without undertaking to state the contents of Levy's letter, or the substance of its contents, cannot be deemed sufficient to prove a refusal by Levy to perform his contract.   Before the defendant can be prejudiced by testimony of a refusal, it is reasonable the court should know what it was.   It certainly was not a refusal to deliver the goods to Waring, as Davis says, for Waring was not mentioned by Davis in his letter.   The conduct of Davis in this matter is somewhat strange.   He made the memorandum in writing as Very's agent, agreeing to accept payment of the balance of the bond in these articles; he delivered to Very the jewelry received, but says he did not tell Very of the contract to receive the balance in goods; and eleven months afterwards he wrote the letter of the 3d of February, which seems to be a new proposal, as if no contract had yet been made on the subject; he misstates the contents of his own letter in a material particular, says he has lost Levy's letter, but the latter declined paying as requested.   We are not satisfied that a breach of contract by Levy, or any laches on his part, is made out.

It is asserted by the complainant's counsel that the contract was void on account of Levy's fraud; that it was obtained from Davis by false statements and the suppression of material facts by Levy, and, of course, cannot be the basis of any right in a court of equity.

But this ground is not open to the complainant.   No fraud is charged in the bill, and though the complainant may not have anticipated, when the bill was filed, that this contract would be set up in the answer as a defence, yet on the coming in of the answer he might have amended his bill, as he did in another particular, averring that if any such agreement was in fact made, it was void, and charging in what the fraud consisted.   Not having done so, he cannot now avail himself of it.   Besides the evidence comes in a very irregular way, and is wholly unsatisfactory.   It is brought out by Davis, in answer to interrogatories which do not call for any statements touching such subjects, but relate to wholly different matters.   Thus the 19th interrogatory inquires: " For what reason was the agreement, marked

B, given or executed, if ever executed." To this Davis replies: " That said agreement was executed and delivered for several reasons: The first of which reasons was, that Levy represented that he had expended large sums of money in defending suits for the benefit of Very, and for the purpose of saving Very from losing the money for which this suit is brought; the second reason was, that said Levy represented himself as insolvent or wholly unable to pay the debt due Very; and thirdly, that the property mortgaged was of little value, and would only pay at best a very small portion of the money intended to be secured by the mortgage; all which statements and representation thus made by said Levy, said Davis, subsequent to the signing and delivering said agreement, found to be false."

The 20th interrogatory inquires, "What was the inducement and consideration for giving and executing the said agreement B?" To this he answers: " That the inducement and consideration for giving and executing agreement " B " were the false representations of said Levy of his circumstances, the value of the property mortgaged, and that he, said Levy, had paid large sums of money to save said debt secured by said mortgage for said Very; these statements and representations were made before and at the time said agreement " B " was executed and delivered, and said Davis then believed them to be true, but subsequently found them to be false."

This is all the testimony in support of the charge of fraud. What he means, when he says he subsequently found the representations to be false, he does not explain. That he had any personal knowledge of their falsehood he does not say; and his statement indicates only that, by subsequent inquiry, and the information elicited thereby, he became satisfied that he was deceived. It would not be in conformity with settled rules of pleading and evidence in courts of equity, to convict a party of a fraud, not charged on the record, and brought out for the first time by the voluntary statements of a witness in answer to no question, and resting at last upon mere hearsay.

The decree of the Circuit Court is affirmed, with costs.

### Order.

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the District of Arkansas, and was argued by counsel. On consideration whereof, it is now here ordered, adjudged, and decreed by this court, that the decree of the said Circuit Court in this cause be, and the same is hereby, affirmed, with costs.