## NEW YORK LIFE INS. CO. v. HORTON.

(Circuit Court of Appeals, Fifth Circuit. November 19, 1925. Rehearing Denied December 14, 1925.)

No. 4483.

1. **Insurance ⬤—87—Rule that Insurance company may limit authority of its agents, so as to bind parties chargeable with notice, held not changed by Alabama statute.**

Insurance company may limit authority of its agents, and thus bind all parties dealing with agents who are chargeable with notice of limitation, and this rule is not changed by Code Ala. 1923, § 8364, as to effect of misrepresentations.

2. **Insurance ⬤—136(1)—Insurer is free to to withhold delivery of life policy for any cause.**

Where application provided that life policy should not be effective until delivered, insurer was free to withhold delivery because of any change in applicant's health, or because, since medical examination, applicant had consulted physician, or for any other reason, or merely because it chose not to accept risk.

3. **Principal and agent ⬤—94—Special and limited power must be strictly construed.**

Special and limited power of agent must be strictly construed, and neither agent nor third person dealing with him as such can claim that agent had power which they had no right to understand was conferred by language authorizing agent to act.

4. **Insurance ⬤—136(4) — Applicant's husband held chargeable with notice of agent's want of authority to deliver policy in case of any change in applicant's health.**

Where insurer instructed soliciting agent not to deliver life policy to third party tendering premium without first ascertaining that there was no change in applicant's health, agent's failure to inquire could not enlarge his authority, and applicant's husband, in dealing with agent, was chargeable with notice of restrictions on agent's authority to deliver policy.

5. **Insurance ⬤—136(2)—Delivery of life policy by agent contrary to instructions held not to render it effective.**

Where life policy, which limited authority of agents, was delivered by agent contrary to instructions not to deliver if there had been any change in applicant's health, or if she had consulted physician, it never became effective.

In Error to the District Court of the United States for the Southern District of Alabama; Robert T. Ervin, Judge.

Action by W. K. Horton, suing as guardian for Lucinda Horton and others, minors, against the New York Life Insurance Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

Thomas M. Stevens, of Mobile, Ala., for plaintiff in error.

C. E. Hamilton, of Greenville, Ala., Norville R. Leigh and S. M. Johnston, both of Mobile, Ala., and B. E. Jones, of Evergreen, Ala., for defendant in error.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

WALKER, Circuit Judge. This was an action on an alleged policy of insurance for $25,000 on the life of the deceased wife of the defendant in error, herein called the plaintiff, who sued as the guardian of minors who were named as beneficiaries in that instrument. Special pleas were filed, which, after setting out provisions in deceased's written application for insurance, which are copied below, alleged to the effect that after said application was made, and at the time of the applicant's receipt of the policy on February 8, 1923, she was ill with influenza, which illness increased the risk of loss under said policy, and had been treated therefor by a physician; that said influenza developed into pneumonia, whereof the deceased died on February 12, 1923; and such pleas tendered to plaintiff the amount of the first and only premium paid. To such pleas the plaintiff filed the following, among other replications:

"That the policy here sued upon was delivered and the first premium paid thereon during the life of the said Beauress C. Horton; that at the time of the delivery of said policy, and the payment of the premium thereon, defendant had knowledge or notice that the said Beauress C. Horton had consulted or had been treated by a physician, as alleged in said plea, between the time of said medical examination and the delivery of said policy, and with such knowledge or notice defendant made delivery of said policy, and collected the premium thereon, and defendant thereby elected to treat the contract as concluded and said policy in force."

The defendant joined issue on that replication and filed the following, among other rejoinders thereto:

"That the policy referred to in said replication contains, among other provisions, the following: 'No agent is authorized to waive forfeitures, or to make, modify, or discharge contracts, or to extend the time for paying a premium.' That the application of Beauress C. Horton, a copy of which is attached to the policy referred to in the said replication, contained, among other provisions, the following: 'It is mutually agreed as follows: * * * That only the president, a vice president, a second vice president, a secre-

tary, or the treasurer of the company can make, modify, or discharge contracts, or waive any of the company's rights or requirements; that notice to or knowledge of the soliciting agent or the medical examiner is not notice to or knowledge of the company, and that neither one of them is authorized to accept risks or to pass upon insurability.' That the said E. C. Hines was the agent who solicited said application. That at the time the said policy was received by the said E. C. Hines from the defendant, and at the time he delivered the same, he had instructions from the defendant that the policy must not be delivered if any change whatever had occurred in the health or occupation of the applicant, or if she had consulted or been treated by a physician since the date of her medical examination, and that in such case he, the said E. C. Hines, should at once return the policy to his branch office, with full particulars, and await further instructions. That the said E. C. Hines did not return said policy to his branch office, and that if the said E. C. Hines did know that the said Beauress C. Horton was sick, and with such knowledge did deliver said policy, such delivery was made in violation of such instructions, and the defendant is not bound thereby."

The court sustained demurrers to that rejoinder.

The instrument sued on, which included the deceased's application for insurance, contained the provisions referred to in above-mentioned pleadings, and the following provisions:

"It is mutually agreed as follows: (1) That the insurance hereby applied for shall not take effect unless and until the policy is delivered to and received by the applicant and the first premium thereon paid in full during his lifetime, and then only if the applicant has not consulted or been treated by any physician since his medical examination, and the contract shall thereupon, unless provided for otherwise above, relate back to and take effect as of the date of this application."

There was uncontroverted evidence to the following effect: Deceased's written application for insurance was made on January 5, 1923. E. C. Hines was the soliciting agent who took the application. By a written instrument Hines was appointed special agent of the defendant "for the purpose of canvassing for insurance on the lives of individuals, and of performing such other duties in connection therewith as the officers of said

9 F.(2d)—21

party of the first part [the defendant] may in writing expressly require of him." That instrument, which was in force when the application was made and up to the time of deceased's death, provided that said agent "shall have no authority for or on behalf of said first party to accept risks of any kind, to make, modify, or discharge contracts." Printed instructions to agents, a copy of which was furnished to Hines by the defendant, contained the following:

"A policy must not be delivered if any change whatever has occurred in the health or occupation of the applicant, or if it has consulted or been treated by a physician since the date of his medical examination. In such case the agent must at once return the policy to his branch office with full particulars and await further instructions. The only exception to this rule is where the full amount of the first premium has been paid in cash at the time the application was made, and the applicant has signed the declaration at the foot of the application to that effect and received the receipt provided, and the policy has been issued for the amount and on the plan applied for without advance in age or extra premium."

The instrument sued on was received by Hines on February 6, 1923, inclosed with a written communication from an officer of defendant, addressed to Hines, and containing the following:

"When a Policy Must Not be Delivered.

"(a) A policy must not be delivered if any change whatever has occurred in the health or occupation of the applicant, or if he has consulted or been treated by a physician since the date of his medical examination. In such case the agent must at once return the policy to his branch office with full particulars and await further instructions. The only exception to this rule is where the full amount of the first premium has been paid in cash at the time the application was made, and the applicant has signed the declaration at the foot of the application to that effect and received the receipt provided, and the policy has been issued for the amount and on the plan applied for without advance in age or extra premium.

"(e) A policy must not be delivered to a third party tendering the premium, unless the agent (by personal interview with the applicant, if possible) first satisfies himself that the applicant has not consulted or been treated by any physician, and that there has not been any change whatever in the health

or occupation of the applicant since the date of his medical examination.

*"These instructions apply to the delivery of this policy. Note them carefully and act accordingly."*

At that time the deceased was ill with influenza at her home in the country near Evergreen, Ala., and that illness, which developed into pneumonia, continued until she died on February 12, 1923. Hines delivered the policy to plaintiff on February 8, 1923, and at that time received the amount of the first premium. Before that time nothing was paid by or for the deceased to the defendant. Before Hines parted with the instrument, deceased had been treated for the illness she then had by two physicians, one of whom had visited her professionally and found her with a temperature between 103 and 104. The evidence was conflicting as to whether Hines was or was not informed of deceased's illness before he delivered the instrument and accepted the amount of the first premium. He testified to the effect that he was not so informed. His testimony to that effect was in conflict with that of several disinterested witnesses. There was no evidence tending to prove that he made any inquiry, or did anything to satisfy himself that the deceased had not consulted or been treated by any physician, and that there had not been any change whatever in her health, since the date of the medical examination, though he went to her residence in the country with the policy, and saw and dealt with her husband, and did not seek a personal interview with the deceased. The defendant excepted to the following statements contained in the court's oral charge to the jury:

"The court will charge you that, when the company sent the policy to Mr. Hines and authorized him to deliver the policy, it thereby authorized him to do all such things as were necessary and proper in the carrying out of the delivery of this policy. So the question is raised whether, among the things that Hines had the authority to do was to examine into the question as to whether or not Mrs. Horton had consulted or been treated by a physician since her medical examination. * * *

"Defendant introduced evidence as to what Hines' authority was. His appointment, which gives his authority, was introduced, and also a book of instructions, which gives his authority. There is no proof that Mr. or Mrs. Horton ever were informed of or knew of this authority. * * *

"They [Mr. and Mrs. Horton] dealt only with Mr. Hines, and, if they didn't know or had no knowledge of what limitations the company placed on his authority, they were not bound by these limitations, but had a perfect right to deal with him as agent of the company, and they dealt with him as agent of the company, and on the apparent authority which the company gave. * * *

"If Mr. Hines was informed, before he delivered the policy, of the illness of Mrs. Horton and her condition at the time, and was also informed that she had been treated by and had consulted these two physicians, and with knowledge of these facts he delivered the policy to her, that would make the contract binding as between the company and the insured."

Exceptions were reserved to the court's refusal to give the following, among other, written charges requested by the defendant:

"The court charges the jury that the evidence in this case shows that the agent, E. C. Hines, did not have authority to deliver the policy, if at the time of delivery he had knowledge or notice of the fact that Mrs. Horton had consulted Dr. E. L. Stallworth on February 6, 1923, for an illness or ailment that increased the risk of loss under the policy. * * *

"The court charges the jury that, if you believe the evidence in this case, you should find a verdict for the defendant."

[1] The following Alabama statute is relied on to sustain some of the above-mentioned rulings:

"No written or oral misrepresentation, or warranty therein made, in the negotiation of a contract or policy of insurance, or in the application therefor, or proof of loss thereunder, shall defeat or void the policy, or prevent its attaching, unless such misrepresentation is made with actual intent to deceive, or unless the matter misrepresented increase the risk of loss." Code of Alabama of 1923, § 8364.

That provision was construed in the case of Mutual Life Insurance Co. v. Mandelbaum, 207 Ala. 234, 92 So. 440, 29 A. L. R. 649, which, so far as is indicated by the report of the case, involved no question as to the instrument there sued on having been duly delivered. The language of that statute indicates no purpose to make an insurer liable on an instrument signed in its behalf by an officer or agent having authority in that regard, but delivered by a person not authorized to do so, or to limit the right of an insurer to

prescribe conditions under which a policy transmitted to a soliciting agent is authorized to be delivered to the applicant for insurance. The statute does not deal with the subject of an insurer limiting the authority of its soliciting agents. The defendant, like any other principal, could limit the authority of its agents, and thus bind all parties dealt with who were chargeable with notice of such limitation. Maryland Casualty Co. v. Campbell, 255 F. 440, 166 C. C. A. 513.

[2] As above indicated, the instrument sued on was sent to Hines with explicit instructions that it "must not be delivered if any change whatsoever has occurred in the health * * * of the applicant, or if he has consulted or been treated by a physician since the date of his medical examination." It is to be noted that Hines was forbidden to deliver the policy if "any change whatever has occurred in the health of the applicant," while the application provided that the insurance provided for should not take effect if, at the time of the payment of the first premium and the delivery of the policy, the applicant had consulted or been treated by any physician since his medical examination. Before the delivery of the policy the defendant was free to withhold it because of any change whatever in the health of the applicant, or because since the medical examination the applicant had consulted or been treated by physicians for an ailment which did not increase the risk, or for any other reason, or merely because it chose not to accept the risk of insuring the life of the applicant. The defendant had not obligated itself to act favorably on the application. The deceased had explicit written notice that the authority of Hines as agent was limited, and that he was not authorized to accept risks, to pass upon insurability, or to waive any of the company's requirements. He did not have either actual or apparent authority to deliver the policy in violation of the defendant's instructions. Having notice that Hines was a special agent with limited authority, the applicant, or her husband acting for her, was bound to inquire into the extent of his authority and to see whether he acted within the scope of it, and the authority of Hines was not enlarged by the failure of the applicant or her husband to consider the question of his authority. Owings v. Hull, 9 Pet. 607, 9 L. Ed. 246; 21 Ruling Case Law, 853.

[3, 4] In addition to the just-mentioned prohibition of delivery of the policy, there was another prohibition applicable in the case of a third party tendering the premium. That provision had the effect of forbidding the delivery to the plaintiff on his tendering the premium, unless Hines first satisfied himself that the applicant had not consulted or been treated by any physician, and that there had not been any change whatever in the health of the applicant since her medical examination. The evidence without conflict showed that after the applicant's medical examination, and before the surrender of the policy by Hines, the applicant had been treated by physicians, and there had been a change in her health. All the testimony as to the applicant's illness indicated that no one informed thereof, with the possible exception of Hines, had any intention or did anything to conceal it, and that the fact that she was ill readily could have been ascertained by any one, situated as Hines was, who sought information on the subject. Where the power of an agent is special and limited, it must be strictly construed, with the result that neither the agent nor a third person dealing with him as such can claim that the agent had a power which they had not a right to understand was conferred by the language authorizing the agent to act. Very v. Levy, 13 How. 345, 14 L. Ed. 173.

The language of the provision in question negatives the conclusion that the defendant intended to empower Hines to deliver the policy to a third party without in any way seeking to inform himself as to the facts in regard to which he was required to satisfy himself before delivering it. Manifestly it was contemplated that Hines was to use some means of informing himself as to facts of which he was required to satisfy himself before parting with the instrument intrusted to him. The language used had the effect of forbidding him to deliver the policy until he was convinced or assured that the applicant had not consulted or been treated by a physician, and that there had not been any change whatever in her health since her medical examination. One whose authority to do an act is dependent upon his being satisfied or convinced of a fact before doing the act exceeds his authority when he does such act without having or seeking knowledge or information as to the existence or nonexistence of such fact. There is nothing to indicate that Hines in any way was misinformed or misled into believing that the facts were other than they really were. He could not enlarge his authority by failing to seek in-

formation as to facts as to which he was required to satisfy himself.

The plaintiff, when acting for his wife in dealing with Hines in reference to the insurance applied for, was chargeable with notice of the restrictions or limitations on the latter's authority to deliver the instrument sent to him, with the result that, if Hines parted with the instrument when he was not authorized to do so, his act was no more effective against the defendant than it would have been if the plaintiff had actually known of the agent's lack of authority. At that time the facts of the change in the applicant's health and of the treatment of her by physicians since the date of her medical examination were well known to the plaintiff, and were unconcealed, uncontroverted, and readily ascertainable by any one, situated as Hines was, who sought knowledge or information on the subject. The attending circumstances were such as to charge the recipient of the instrument with notice that the act of Hines in parting with possession of it was unauthorized. There was no evidence tending to prove that, within the meaning of the terms of his agency, Hines satisfied himself of the nonexistence of facts which confessedly existed and were readily ascertainable.

[5] It is apparent that rulings of the court were inconsistent with the above-stated views. The pleadings in the case put in issue the enforceability of the instrument in suit, on the grounds that it never became effective by an authorized delivery of it, and that, if it was duly delivered, the liability asserted did not accrue under its terms, because at the time of the delivery the applicant had an illness which increased the risk of loss. There was evidence to support findings that the instrument sued on was unenforceable on each of the grounds mentioned. The existence of one of those grounds was shown by uncontroverted evidence. Evidence without conflict showed that, when Hines surrendered the policy, a state of facts then existed which deprived him of authority to deliver it. A result of uncontroverted evidence showing that the instrument sued on never became effective by an authorized delivery was that defendant was entitled to an instruction to the jury to find in its favor.

It follows that the court erred in refusing to give the above-mentioned requested instruction to that effect. Because of above-mentioned errors, the judgment is reversed, and the cause is remanded for a new trial.

Reversed.