[No. 9215.  Department One.  March 22, 1911.]

## M. L. BEVIS, *Appellant* v. BIG BEND ABSTRACT COMPANY, *Respondent.*[1]

PRINCIPAL AND AGENT—LIABILITY TO PRINCIPAL—AMBIGUOUS IN-STRUCTIONS. Instructions to an agent to use certain moneys in clos-ing up a loan and the payment of judgments so that the loan would be a first lien on the land, do not render the agent liable for failure to pay off judgments that were subsequent to the mortgage, where in other letters the agent was instructed that the principal was not interested in these judgments and not to delay closing up the loan on account of them; since the instructions as a whole were ambigu-ous and susceptible of the construction that part of the money was to be paid to the borrower, which was done by the agent in good faith.

Appeal from a judgment of the superior court for Spo-kane county, Neal, J., entered February 25, 1910, upon granting a nonsuit, after a trial before the court and a jury, dismissing an action in tort.  Affirmed.

*Gallagher, Smith & Mack*, for appellant, cited: 1 Am. & Eng. Ency. Law (2d ed.), pp. 1058, 1060; 31 Cyc. 1415, 1453, 1491, 1492; *Whitney v. Merchants' Union Express Co.*, 104 Mass. 152, 6 Am. Rep. 207; *Hall v. Storrs*, 7 Wis. *253; *Minneapolis Trust Co. v. Mather*, 181 N. Y. 205, 73 N. E. 987; *Marshall v. Ferguson*, 94 Mo. App. 175, 67 S. W. 935; *Bowerman v. Rogers*, 125 U. S. 585; *Welsh v. Brown*, 8 Ind. App. 421, 35 N. E. 921; *British American Ins. Co. v. Wilson*, 77 Conn. 559, 60 Atl. 293.

*H. J. Hibschman* and *Sessions & Warren*, for respond-ent, contended that letters of instruction are interpreted most strongly against the writer.  *Craighead v. Peterson*, 72 N. Y. 279, 28 Am. Rep. 150.  Especially so where they are subject to two interpretations and the agent has acted in good faith upon one of them.  31 Cyc. 1408; *Oxford Lake*

[1]Reported in 114 Pac. 191.

*Line v. Pensacola First Nat. Bank,* 40 Fla. 349, 24 South. 480; *Osborne & Co. v. Ringland & Co.,* 122 Iowa 329, 98 N. W. 116; *Minnesota Linseed Oil Co. v. Montague,* 65 Iowa 67, 21 N. W. 184; *Hopwood v. Corbin,* 63 Iowa 218, 18 N. W. 911; *Berry v. Haldeman,* 111 Mich. 667, 70 N. W. 325. If the instructions of a principal to his agent are ambiguous or capable of different constructions, the agent is not chargeable with disobedience or its consequences in case he makes an honest mistake and adopts a construction different from that intended by the principal, and in such cases the loss, if any, must fall upon the principal rather than the agent. 31 Cyc. 1454; 1 Am. & Eng. Ency. Law (2d ed.), 1062; 2 Ency. L. & P. 1050; *Minnesota Linseed Oil Co. v. Montague, supra; Falsken v. Falls City State Bank,* 71 Neb. 29, 98 N. W. 425; *Bessent v. Harris & Howell,* 63 N. C. 542; *Anderson v. Grand Forks First Nat. Bank,* 4 N. D. 182, 59 N. W. 1029; *Holmes & Co. v. Misroon,* 3 Brev. (S. C.) *209; *Pickett v. Pearsons,* 17 Vt. 470; *National Bank of Commerce v. Merchants' Nat. Bank,* 91 U. S. 92.

DUNBAR, C. J.—This is an action to recover money alleged to be wrongfully paid out by the defendant as agent of the plaintiff. The facts out of which the case grows are substantially as follows: M. L. Bevis, the appellant, had contracted to make a mortgage loan on certain real estate owned by one James Shelton, situated in Lincoln county, Washington. The respondent is a corporation doing business in Lincoln county, and is engaged in furnishing abstracts of title to real estate situate in said county. The appellant and Bevis Brothers, of which appellant is a member, had made several loans in Lincoln county prior to this time, and procured the abstracts of title from respondent, and the respondent had been in the habit of closing up their loans and attending to the details. The appellant ordered from respondent an abstract of title to the land upon which appellant was to make the loan to Shelton. After Shelton

and wife made the mortgage to appellant, and after the same was placed on record, certain judgments were procured in the superior court for Lincoln county against James Shelton, some of which became liens on this mortgaged property. After these judgment liens attached, Shelton and wife sold the land in question to one Kik, subject to the mortgage of appellant. Mr. Kik paid $899.81 to Bevis Brothers by agreement with Shelton, to be applied toward payment of these judgments, and Bevis Brothers afterwards sent this money to the Big Bend Abstract Company for the purpose, as the complaint alleges, of having the abstract company pay off these judgments so that the title to the property would be clear in Kik except as to the Bevis mortgage; and pursuant to that agreement, Bevis Brothers sent to the Big Bend Abstract Company $899.81 with written instructions what to do with the money. That letter is an exhibit in the case, and is couched in the following language:

"January 7th, 1909.

"Big Bend Abstract Company,
          "Davenport, Wash.
   "Gentlemen: You will please find enclosed check No. 4010 for the sum of $899.81 to be used in closing up the James Shelton loan. We will send you the abstract in a day or two with attorneys requirements attached. Mr. Shelton has sold the farm. There are a number of judgments and other liens against his land, all of which must be cleaned up so our loan will be a first lien on the land and title good in purchaser Mr. Kik.          Very truly yours, Bevis Bros."

The Big Bend Abstract Company used all the money in accordance with instructions, except $542.30 which it turned over to James Shelton without paying off these judgments which were referred to. The judgments not being paid, Kik subsequently had to pay them to protect the land, and it is to recover back this $542.30, which appellant claims was wrongfully turned over to Shelton, that this action is brought. Upon the trial of the cause the case was taken from the jury by the court, who decided that the allegations

of the complaint had not been sustained by any testimony. The case was thereupon dismissed and judgment rendered to defendant for costs, and from such judgment of dismissal, this appeal is prosecuted.

There is no controversy over the facts in this case, and all the contention is with relation to the proper construction that should be placed upon the correspondence, and upon the force of the letter which is quoted above is based the appellant's contention that the respondent exceeded its authority in paying this money to Mr. Shelton. Of course it may be conceded that, where an agent violates his duties to his principal, whether it be by exceeding his authority or by negligence or omission in the proper functions of his agency, he is responsible to his principal for such damages as flow from the violation of such obligation; and if the authority for this transaction and the payment of this money had been confined to the letter quoted, we think there could be no question that the agent had exceeded his authority, for the direction seems to be plain and explicit that the duty of the respondent was, before paying any money to Mr. Shelton, to see to it (1) that the mortgage which the appellant was negotiating should be a first lien on the land, and (2) that the title should be good in the purchaser, Mr. Kik. But there was a long series of correspondence between these parties, commencing back several months when the first attempt was made to negotiate this mortgage loan by the appellant to Shelton, the first letter on the subject having been written March 3, 1908, where the respondent was informed that Bevis Brothers had advised Mr. Shelton that they would send the funds to the respondent for the purpose of closing up the loan, and that Mr. Shelton would call upon the respondent. These letters in relation to this loan were of frequent occurrence, and the loan was the only subject of the correspondence up to the date of the letter of January 7, 1909, set forth above. This was the first time that there was any intimation to respondent that it had any other duty to per-

form in the matter than to see that the appellant's mortgage should be a first lien on the land. The next letter addressed to the respondent was on January 14, 1909, as follows:

"We are inclosing you the abstract in the James Shelton loan. Clean up the mortgage on this land held by the Hypotheekbank, shown on sheet No. 17, also pay the taxes for 1907. We need the patents issued to Harry E. Watson and Thomas B. Kelley. When these three things are done return the abstract to us. Our loan will then be a first and valid lien on the land. Do not undertake to hold the abstract until the judgments are paid and the title cleaned up in every other way with the title good in Charles L. Kik. We want the abstract returned to us at once. Pay the Hypotheekbank, pay the taxes for 1907 and secure the patents. If you cannot secure the patents waive this requirement and then return the abstract any way."

On the same date another letter was written, as follows:

"In making settlement with James Shelton on his loan, please take out $3.20 for certified copies of patents. You will notice that the attorneys requirements call for these two instruments and they must also be recorded. Charge both of these items to Mr. Shelton in settlement."

On January 19, the following was written:

"How are you succeeding in closing up the James Shelton loan? As soon as you pay the taxes and the old mortgage held by the Hypotheekbank, our loan will be the first and valid lien on the land. We will send you within a day or two the original patents which are wanted for record to complete the title."

January 20:

"We are inclosing you for record the patents in the James Shelton loan. Kindly have these instruments recorded at once and shown on the abstract. Then there is nothing left to do except to pay the taxes out of the money which you have on hand and clean up the mortgage held by the Hypotheekbank. After this is done, bring the abstract down to date and return it to us when our loan will be complete. Do

not retain the abstract until all the judgments are cleaned up. We are not interested in these matters."

January 27:

"Please advise us promptly what condition the James Shelton loan is in and whether or not you have paid off the old mortgage held by the Hypotheekbank. We want to clean up this transaction. It has been on hand for a long while."

February 3:

"We have received the abstract in the James Shelton loan, but we find that you have not paid the 1907 taxes amounting to $40.20. Our instructions were to pay the taxes and the mortgage held by the Hypotheekbank. How does it happen that you did not pay these taxes? The 1908 taxes are not delinquent but the 1907 taxes are and should have been paid. Please advise us," etc.

It would seem from this volume of correspondence, and more to the same effect which we have not reproduced, that Bevis Brothers, at least to a certain extent, obscured the proper construction of the instructions given to their agent. As we have said, if the letter of January 7 had stood by itself, there would have been no excuse for the failure of the respondent to pay the judgments on the land subsequent to the execution of the mortgage; but this matter seems to have been lost sight of entirely by Bevis Brothers themselves, and their constant solicitude seems to have been with reference to the title of the land so far as their mortgage was concerned, and to the little bills which they had instructed the respondent to pay before settling the matter up with Shelton. In addition to this it would seem that that idea was forced upon the attention of the respondent in the letter of January 20, when they said:

"After this is done, bring the abstract down to date and return it to us, when our lien will be complete. Do not retain the abstract until all the judgments are cleaned up. We are not interested in these matters."

If the principals were not interested in the matter of paying off of the judgments, and specially instructed the agent to return the abstract before they were paid off, because they were not interested in them, it would seem that the agent would be justified in placing the construction upon the letters which it did place upon them, and that there was reason in the answer which it made to the appellant's claim, in a letter dated March 4, 1909, when it was said:

"In your letter of January 7, inclosing check for $899.81, you say these funds are to be used in closing up the James Shelton loan according to attorneys' requirements, etc., which would leave the impression that we were only closing up the loan and while further on you say that you wish your loan to be a first lien, 'and title good in purchaser, Mr. Kik,' this in itself might lead one to think that the money was to be held for the purpose of perfecting Mr. Kik's title, although you nowhere stated that this money was for that purpose or that you expected me to be concerned in any way about Mr. Kik's affairs or that Mr. Kik had any claim on this money. And in your letter of January 20th you again speak of completing your loan and say, 'Do not retain the abstract until all the judgments are cleared up. We are not interested in these matters.' It does seem to me that from all the correspondence that passed between us that I could not be held either legally or morally for this money, as you intimated over the telephone. If you expected any more than your loan closed or anything out of the regular course of business I would surely have expected you to have told me before the loan was closed."

Considering all the circumstances of this case, the fact that this money had been sent in connection with the mortgage loan desired by Bevis Brothers; that that, and that alone, had been the subject of all the correspondence, excepting the letter of January 7 in which the title of Mr. Kik had been incidentally mentioned; that the agent had been expressly informed the principal was not interested in judgments subsequent to the execution of his mortgage; that it appears from the record the respondent never had money enough in its possession to perfect the title so far as the mortgage was con-

cerned and also pay off the judgments which were subsequent liens on the land,—we think it would be hard and unjust to hold the agent responsible for the payment of the money to Shelton, with whom the respondent had been instructed to close up the business, and in a transaction which it had been so often urged to bring to a culmination.

The United States supreme court, in *Very v. Levy*, 13 How. 345, in discussing this question lays down this rule:

"But if the words in question touch only the particular mode in which an object, admitted to be within the power, is to be effected, and they are ambiguous, and with a reasonable attention to them would bear the interpretation on which both the agent and a third person have acted, the principal is bound, although upon a more refined and critical examination the court might be of opinion that a different construction would be more correct. . . . Such an instrument is generally to be construed, as a plain man, acquainted with the object in view, and attending reasonably to the language used, has in fact construed it."

In discussing the question of ambiguous instructions and interpretation between principal and agent, it was held in the case of *Minnesota Linseed Oil Co. v. Montague & Smith*, 65 Iowa 67, 21 N. W. 184:

"Where a principal gives to his agent instructions which are susceptible of two meanings, that meaning which the agent in good faith attaches to them and acts upon is to be adopted; and if loss occurs thereby, the principal and not the agent must bear it; and it matters not whether the principal had reason to believe, or not, that the agent so understood the instructions."

In *Craighead v. Peterson*, 72 N. Y. 279, 28 Am. Rep. 150, it is said that "letters of instruction, etc., in commercial transactions" "are interpreted most strongly against the writer, especially when they are susceptible of two interpretations, and the agent has acted in good faith upon one of such interpretations."

This seems to be the general rule, and there being no question of good faith of the agent involved in this case, and as

we think it intelligently acted upon the instructions given it, the judgment of the lower court will be affirmed.

PARKER, MOUNT, FULLERTON, and GOSE, JJ., concur.