**UNION CENTRAL LIFE INS. CO. OF CINCINNATI, OHIO, v. IMSLAND et ux.**

**No. 10767.**

Circuit Court of Appeals, Eighth Circuit.
July 21, 1937.

Wallace E. Purdy, of Brookings, S. D., for appellant.

S. W. Clark, of Redfield, S. D. (Dunham & Dunham, of Clark, S. D., on the brief), for appellees.

Before STONE, SANBORN, and THOMAS, Circuit Judges.

SANBORN, Circuit Judge.

The broad question presented by this appeal is whether a mortgagee which has agreed to accept a compromise settlement of the mortgage debt may be compelled to carry out its agreement, where it appears that the mortgagors have performed acts and incurred expense in reliance thereon. The court below answered the question in the affirmative and entered a decree accordingly, from which this appeal is taken by the mortgagee.

The facts are not in dispute and most of them are agreed to. It appears that in 1923 Lars Imsland and his wife, Amanda, owned and occupied a 479-acre farm in Clark county, S. D. They borrowed $14,-000 from the Union Central Life Insurance Company and gave to it a mortgage

upon the farm to secure the repayment of this debt with 6 per cent. interest according to the terms of thirty-one promissory notes described in the mortgage as follows: "The first Note being for Four Hundred One & 33/100 (401.33) Dollars, and the remaining 30 notes for Ten Hundred Seventeen & 09/100 ($1,017.09) Dollars each; the first note being payable on April 1, 1924, and one of the remaining notes being payable on same day in each of the succeeding thirty years, (or prior to maturity in accordance with Stipulation therein). The total amount of the above notes includes a loan of $14,000.00, and interest to maturity of each note calculated at six per cent. and expense charge of ———— cents per one hundred dollars per annum, and all notes bear interest at ten per cent. per annum after maturity until paid." The mortgage required the mortgagors to pay all taxes upon the farm, and gave to the mortgagee the right to declare the entire mortgage debt due and to foreclose upon failure of the mortgagors to pay any note at maturity or to comply with any covenant of the mortgage by them to be performed. They paid all notes maturing prior to April 1, 1933. They did not pay the note which matured on that date. Apparently at the suggestion of an agent of the Union Central, they then endeavored to borrow from the Land Bank Commissioner $1,500 upon a second mortgage, in order to make good their default; but their application for the loan was denied. About November 1, 1933, they received notice from the National Farm Loan Association of Clark, S. D.— the local association affiliated with the Federal Land Bank of Omaha—through which they were negotiating for a loan, that the Federal Land Bank of Omaha would lend them $7,000 upon a first mortgage, and that the Land Bank Commissioner would lend them $3,000 upon a second mortgage, provided that the proceeds of these two loans would be accepted by the Union Central in full satisfaction of its mortgage.

The Union Central at first refused to accept the proceeds of the proposed loans in satisfaction of its mortgage, but on May 18, 1934, in a letter to the National Farm Loan Association, it stated: "The following is an itemized statement of the amount required to pay the above numbered Loan: $10,000.00 in compromise settlement, if paid by 6-1-34, (Interest per day after 6-1-34, $1.67)."

On July 21, 1934, the mortgagors advised the Union Central that the proceeds of their loans from the Land Bank and the Commissioner would not equal $10,000, since $865 would be deducted for expenses (stock in Farm Loan Association, loan commission, title fee, taxes, and bill for abstract), leaving net proceeds of only $9,135. To make up the deficiency in the $10,000 which the mortgagee had agreed to accept, Lars Imsland executed and delivered to the mortgagee his promissory note for $865, payable January 1, 1935, and secured by a chattel mortgage upon his cattle and machinery. The mortgagee, upon receipt of this note, wrote the secretary-treasurer of the National Farm Loan Association at Clark, S. D., as follows:

"To the Federal Land Bank of Omaha:

"The following is a true and correct statement of the indebtedness which is owing the undersigned by the applicant whose name appears above:

"Compromise settlement, .... $9,135.00

"Interest at 6% from October 8, 1934, to date paid.. $.......

"Total, .................... $.......

"Daily interest $..........

"The above indebtedness is secured by a real estate mortgage.

"The undersigned agrees to accept payment of the hereinbefore described indebtedness, in compromise settlement of its claim.

"Union Central Life Ins. Co.,
"By Stanton Allen, Manager.
"Dated: Sept. 17, 1934."

At the same time, the mortgagee notified the secretary-treasurer, of the association that it had a blanket agreement with the Federal Land Bank to accept Federal Farm Mortgage Corporation bonds in payment of mortgage loans. This blanket agreement provided:

"Whereas, the undersigned is the owner and/or holder of various mortgages on farm property, which it is contemplated will be refinanced through loans by the twelve Federal Land Banks and/or the Land Bank Commissioner;

"Now, Therefore, The undersigned agrees as follows:

"(1) That in the case of each agreement by the undersigned to accept loan proceeds in satisfaction of indebtedness due the undersigned payment may be made in Federal Farm Mortgage Corporation

Bonds at any time within a period of 90 days after the date of such agreement.

"(2) That such bonds will be accepted in payment at their face value, with any necessary adjustment for interest accruing to the date of payment provided that in each case the bonds shall be of the last issue preceding the date the proceeds of the loan or loans are disbursed. * * *"

On October 26, 1934, the mortgagors executed two mortgages upon their farm, one for $6,900 to the Land Bank, and a second for $3,100 to the Land Bank Commissioner. These mortgages were recorded on November 5, 1934. There was delay in completing the refinancing, apparently due in part to a demand of the Land Bank that it be permitted to deduct an additional $587.86 from the proceeds of its loan. This demand was finally waived.

Lars Imsland's note for $865 to the Union Central according to its terms, fell due on January 1, 1935. Payment of the note was not demanded, and the note was not paid.

On February 2, 1935, more than a month after Lars Imsland's note was ·due, the Union Central wrote to the Land Bank with respect to the delay in the refinancing of the Imsland loan, closing its letter with the following statement: "We are still holding open our compromise settlement with Mr. Imsland, which is much in his favor, but we cannot continue to do so indefinitely. Therefore, if you could tell me just when this transaction will be closed, I would appreciate it."

On February 6, 1935, the bank replied, explaining the delay and stating that "under the circumstances, arrangements are in progress to permit remittance now on those pending new Land Bank and Commissioner's Loan in case it is found that title and other requirements have been or can be met."

The Federal Land Bank on or about February 11, 1935, remitted to the secretary-treasurer of the local association at Clark, S. D., orders on the Federal Reserve Bank at Kansas City for bonds of the Federal Farm Mortgage Corporation in the amount of $9,000, together with two checks in favor of the Union Central, to make up the balance of $9,135 which it had agreed to accept in the settlement of its mortgage loan. These orders entitled the Union Central to receive the bonds from the Federal Reserve Bank of Omaha. While on

September 17, 1934, the date when the Union Central agreed to accept $9,135 with interest in settlement of the amount owed it by the Imslands, the bonds of the Federal Farm Mortgage Corporation used in closing Land Bank loans bore interest at 3¼ per cent. per annum, matured in thirty years, and were callable in not less than ten years, the orders for bonds which were sent to the secretary-treasurer to be turned over to the Union Central, in accordance with its agreement to accept bonds, called for bonds bearing 3 per cent. interest, maturing in twelve years, and callable in seven years. Notice that the orders for bonds and the checks were ready for delivery to it was received by the Union Central on or about February 16, 1935. It refused to accept the checks and orders for bonds or to carry out its compromise agreement. On March 4, 1935, it returned to Lars Imsland his $865 note marked "cancelled."

Shortly thereafter the Union Central commenced this suit in equity to foreclose its mortgage, alleging that there was due thereon on May 17, 1935, the date when suit was commenced, $14,834.56; that default had occurred in the conditions of the mortgage; and that there had been placed on record a first mortgage to the Federal Land Bank and a second mortgage to the Commissioner. The prayer was that the mortgage be foreclosed and a decree entered barring all rights or claims of the Land Bank and the Commissioner. No answers were filed by or on behalf of the Land Bank or the Commissioner, but the mortgagors answered, admitting the execution of the mortgage, their default, and the amount of the mortgage debt. As an affirmative defense they set up their negotiations for loans from the Federal Land Bank to refinance their indebtedness to the Union Central, the Union Central's agreement to accept $9,135 in payment thereof, and its subsequent refusal to comply with its agreement after the mortgagors had performed their part of the agreement and had given to it Lars Imsland's note for $865 and had paid or incurred expenses in connection with the procuring of the loans from the Land Bank and the Commissioner; and they prayed for a decree requiring the Insurance Company to accept what it had agreed to accept in payment of their indebtedness to it.

The appellant in its specification of errors criticizes the findings and conclu-

368

sions of the trial court. It is obvious that, since this court has before it all of the necessary facts to enable it to determine whether the decree appealed from is correct or whether some other decree should be entered, it is unnecessary to determine whether the findings of fact and conclusions of law of the trial court were in all respects accurate.

██ "An appeal in an equity suit invokes a new hearing and decision of the case upon its merits upon the lawful evidence. Anderson v. Hultberg (C.C.A.8) 247 F. 273, 279; Dowagiac Mfg. Co. v. Lochren (C.C.A.8) 143 F. 211, 214, 6 Ann.Cas. 573; Unkle v. Wills (C.C.A.8) 281 F. 29, 34; Westermann Co. v. Dispatch Printing Co. (C.C.A.6) 233 F. 609, 611, reversed on other grounds 249 U.S. 100, 39 S.Ct. 194, 63 L. Ed. 499; Presidio Mining Co. v. Overton (C.C.A.9) 270 F. 388, 390; American Central Ins. Co. v. Harmon Knitting Mills (C. C.A.7) 39 F.(2d) 21, 24; Jonah v. Armstrong (C.C.A.10) 52 F.(2d) 343, 345. The reviewing court will, if possible, dispose finally of an equity suit upon the record on appeal and not remand it for further trial in the District Court. Harrison v. Clarke (C.C.A.8) 182 F. 765, 767; Unkle v. Wills (C.C.A.8) 281 F. 29, supra." Johnson v. Umsted (C.C.A.8) 64 F.(2d) 316, 318.

The contentions of the appellant may be stated briefly as follows:

(1) The agreement to settle the mortgage debt for the equivalent of $10,000 was not executed; it constituted a mere executory accord, without satisfaction; it did not affect the mortgagors' obligation to pay the mortgage debt; and it was not a binding contract which equity would specifically enforce.

(2) The mortgagors failed to comply with the terms of the compromise agreement.

██ 1. Failure to make a payment or to perform an act required by a new agreement entered into in settlement of a debt or claim leaves such an agreement a mere executory accord, without satisfaction, and as such no bar to the enforcement of the original debt or claim. See note in 10 A.L.R. 222-226. The rule governing such agreements is stated by the American Law Institute in its Restatement of the Law of Contracts as follows (§ 417):

"(a) Such a contract does not discharge the duty, but suspends the right to enforce it as long as there has been neither a breach of the contract nor a justification for the creditor in changing his position because of its prospective nonperformance.

"(b) If such a contract is performed, the previously existing duty is discharged.

"(c) If the debtor breaks such a contract the creditor has alternative rights. He can enforce either the original duty or the subsequent contract.

"(d) If the creditor breaks such a contract, the debtor's original duty is not discharged. *The debtor acquires a right of action for damages for the breach, and if specific enforcement of that contract is practicable, he acquires an alternative right to the specific enforcement thereof. If the contract is enforced specifically, his original duty is discharged.*" (Italics supplied.)

██ As is natural, most of the decisions relating to accord and satisfaction have dealt with the right of a creditor in an action at law to recover what is due him on the original obligation, and such cases are all to the effect that the debtor is not discharged from that obligation unless the accord has been fully executed. There is, however, another rule, well established by cases wherein the question has arisen, to the effect that where a debtor and creditor have entered into a binding contract for a settlement of a debt, the debtor has rights thereunder which either a court of law or a court of equity may recognize, even though it appears that the accord has not been fully executed and the original obligation has not been discharged. Very v. Levy, 13 How. 345, 357, 14 L.Ed. 173; Schweider v. Lang, 29 Minn. 254, 13 N.W. 33, 43 Am.Rep. 202; Fred v. Fred (N.J.Ch.) 50 A. 776, 779; Trenton St. Ry. Co. v. Lawlor, 74 N.J.Eq. 828, 71 A. 234, 236, 74 A. 668; Baker v. Hawkins, 14 R.I. 359, 361, 362; Campbell Coal Co. v. Pano, 51 Ga.App. 232, 180 S.E. 139, 141; Bell v. Pitman, 143 Ky. 521, 136 S. W. 1026, 1027, 1028, 35 L.R.A.(N.S.) 820; Young v. Jones, 64 Me. 563, 570, 18 Am. Rep. 279.

In the cases of Schweider v. Lang, supra, and Bell v. Pitman, supra, the right of a debtor to recover damages for breach of a contract, whereby a creditor had agreed to accept less than that which was due him under a prior obligation, was recognized. The cases of Young v. Jones, supra, and Campbell Coal Co. v. Pano,

supra, also recognize that a debtor may have a remedy under an executory contract of accord if that contract is breached by a creditor.

Here we are concerned merely with the asserted right of the mortgagors, in a suit in equity brought to enforce a mortgage debt through foreclosure, to have specific performance of an agreement whereby the mortgagee agreed to accept less than the amount due upon the mortgage in satisfaction of that debt. In principle we think it is impossible to distinguish this case from the case of Very v. Levy, 13 How. 345, 347, 14 L.Ed. 173. There Very, the assignee of the original mortgagee, entered into an agreement with Levy, the mortgagor, "to take in goods, such as jewelry, &c., the balance due me on a note assigned by D. Lindsley to me, as also a mortgage assigned by the said Lindsley; said goods to be delivered to me, or any agent at Little Rock, Arkansas, at reasonable prices, at said Little Rock; said goods to be called for within twelve months from this time." The mortgagor did not deliver a sufficient amount of goods to discharge the original debt under this agreement. Very brought suit to foreclose his mortgage. Levy brought into court and placed in the hands of a receiver a sufficient quantity of goods to make good the accord. A master was directed to select the requisite amount to satisfy the mortgage debt. The court then decreed that the debt and mortgage were satisfied and dismissed Very's suit. The Supreme Court, in affirming the decree, said (page 357 of 13 How., 14 L. Ed. 173): "An agreement by a creditor, to receive specific articles in satisfaction of a money debt, is binding on his conscience; and if he ask the aid of a court of equity to enforce the payment, he can receive that aid only to compel satisfaction in the mode in which he has agreed to accept it. A court of equity will even go further; and in a proper case will enforce the execution of such an agreement. At law, a mere accord is not a defence; and before breach of a sealed instrument, there is a technical rule, which prevents such an instrument from being discharged, except by matter of as high a nature as the deed itself. Alden v. Blague, Cro. Jac., 99; Kaye v. Waghorne, 1 Taunt. 428; Bayley v. Homan, 3 Bing. N. C., 915. But no such difficulties exist in equity. On the broad principle that what has been agreed to be done, shall be considered as done,

the court will treat the creditor as if he had acted conscientiously, and accepted in satisfaction what he had agreed to accept, and what it was his own fault only that he had not received. Indeed, even a court of law, in a case free from the technical difficulties above noticed, will do the same thing. Bradly v. Gregory, 2 Camp. 383."

The same rule was recognized and applied in the case of Baker v. Hawkins, 14 R.I. 359, and in Trenton St. Ry. Co. v. Lawlor, 74 N.J.Eq. 828, 71 A. 234, 74 A. 668. In the first of these cases, the court said (page 362 of 14 R.I.): "Contracts for the compromise of doubtful claims have often been specifically enforced. Atwood v. ———, 1 Russ. 353; Waterman on Specific Performance, § 43, and cases cited. It has been held that an agreement between a creditor and a third person for valuable consideration, whereby the creditor agreed to compromise his claim against the debtor, would be specifically enforced. Phillips v. Berger, 2 Barb. (N. Y.) 608; also in 8 Barb. (N.Y.) 527. And see Adderley v. Dixon, 1 Sim. & Stu. 607. The tendency in this country is to extend the jurisdiction to all cases in which either of the parties is fairly entitled to a more perfect relief than he can get at law. Waterman on Specific Performance, § 16, notes. On the whole we are of opinion that the bill can be sustained notwithstanding this ground of demurrer." From Trenton St. Ry. Co. v. Lawlor, supra, we quote the following (page 236 of 71 A.): "The agreement for compromise remains unexecuted; the defendant having refused to accept the money and repudiated his contract. It is therefore an accord unexecuted. An accord that is unexecuted is not an available defense at law against the original cause of action, but it may in a proper case become available as an equitable defense thereto. Headley v. Leavitt, 65 N. J.Eq. 748, 55 A. 731."

■■ It is obvious that the only adequate relief for the mortgagors in this case was the relief which was decreed by the court below. They had bargained with the Union Central for the release of their farm from the lien of the mortgage. Either they were entitled to have what they had bargained for, or the Union Central was entitled to foreclose.

The validity of the agreement entered into between the mortgagors and the Union Central cannot be doubted. The par-

ties were of full age and of sound mind. The Union Central, after accepting Lars Imsland's note for $865, promised to accept $9,135 additional in Federal Farm Mortgage Corporation bonds plus interest to date of delivery, in full satisfaction of the mortgage debt. In reliance upon this promise, the mortgagors completed their negotiations for the loans from the Land Bank and the Commissioner, and in so doing incurred substantial expenses for abstracting and recording. The bonds were tendered to the Union Central. It could have received them by accepting and presenting the orders. The promise of the mortgagors to substitute bonds guaranteed by the government for the defaulted mortgage debt, and to go to the trouble and expense incident to the carrying out of their agreement with the Union Central to refinance its loan, constituted the consideration for its promise to accept the proceeds of the loans procured. It is elementary that a promise is sufficient consideration for another promise. Fidelity & Deposit Co. of Maryland v. Wheeler (C.C.A.8) 34 F.(2d) 892, 895; H. F. Wilcox Oil & Gas Co. v. Skidmore (C.C. A.8) 72 F.(2d) 748, 752.

2. The Union Central points to the fact that the proceeds of the Federal loans were not tendered to it within ninety days; that Lars Imsland did not pay his note for $865 on January 1, 1935; that he did not tender the interest on $9,135 from October 8, 1934; that orders for bonds were tendered, instead of bonds; and that the orders called for bonds of a different maturity and bearing a different rate of interest than those which were originally bargained for by the Union Central.

The original offer of settlement accepted by the Union Central was perhaps conditioned upon performance within a definite time, but its later offer of September 17, 1934, contained no such condition. The provision of the blanket agreement requiring that bonds to be accepted by the Union Central must be delivered within ninety days was waived by its letter of February 2, 1935, wherein it clearly indicated that it was holding the compromise agreement open. Lars Imsland's note was given as a part of the refinancing plan which it was expected would be closed by January 1, 1935. Payment of the note was not demanded and it was returned by the Union Central after it had repudiated its agreement to compro-

mise. It was not incumbent upon the mortgagors to tender payment of this note after the Union Central refused to accept the bonds in satisfaction of the mortgage debt. To do so would have been an idle gesture. The record shows that the mortgagors were able and willing to comply with the compromise agreement with respect to the payment of interest to the date of delivery of the bonds. The bonds offered to the Union Central were the bonds called for by its blanket agreement with the Land Bank, namely, bonds of the last issue preceding the date of the disbursement of the proceeds of the loans.

It was the fault of the Union Central that the agreement of compromise was not carried out. The decree which was entered merely compels it to do what in equity and good conscience it should have done without any compulsion.

The decree is affirmed.