AKTIESELSKABET DAMPSKIBSSELSKABET SVENDBORG and Dampskibsselskabet Af 1912 Artieselskab, et al.,

v.

The UNITED STATES.

No. 50446.

United States Court of Claims.
April 5, 1955.

Stanley W. Schaefer, New York City, for plaintiffs.

Daniel M. Gribbon, Washington, D. C., as amicus curiae, and John G. Laylin, Nestor S. Foley, Wallace G. Dempsey, John H. Schafer, III, and Covington & Burling, Washington, D. C., were on the brief.

John B. Miller, Washington, D. C., with whom was Warren E. Burger, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

WHITAKER, Judge.

This case is before the court on defendant's motion for summary judgment on plaintiffs' first cause of action, in which plaintiffs sue for just compensation for the taking of 12 of its vessels.

Defendant says that plaintiffs' claim for just compensation was settled and agreed upon by a contract entered into between the parties on May 10, 1946. The question presented is whether or not this contract supplants the claim for just compensation.

The contract in its preamble recites that the defendant took title to and possession of the vessels named and that the Administrator of the War Shipping Administration, which agency had succeeded to certain functions of the Maritime Commission, had determined just compensation therefor, and that the owners had agreed to accept such determination, with the proviso that the owners should be permitted to reacquire the vessels still in existence; and finally it was recited:

"Whereas, the parties hereto desire to effect a final adjustment and settlement of their respective claims and obligations now or hereafter in any manner arising from or with respect to the said requisitions and the operation of the vessels under the said requisitions;

"Now, therefore, in consideration of the mutual covenants and agreements hereinafter contained, the parties hereto do hereby agree as follows:"

It would appear from this preamble that the agreement between the parties was in settlement of the owners' claim for just compensation. From the preamble it would appear the controversy theretofore in issue was to be composed, and that the rights of the parties were by the contract to be delineated and defined and determined, and that such delineation, definition and determination should take the place of the obligation to pay the uncertain and controversial sum which would represent just compensation for the taking of the vessels.

However, article 1 of the contract casts some doubt upon whether or not the contract was to supplant the obligation to pay just compensation, at least until the contract was fully performed. This article reads:

"* * * the Administrator agrees to deposit with the Treasurer of the United States, in addition to the sum of One Million Three Hundred Fifty Thousand ($1,350,000) Dollars, heretofore deposited on ac-

count of just compensation, the sum of Twelve Million Seven Hundred Fifteen Thousand Eight Hundred Forty-eight Dollars and Three Cents ($12,715,848.03), and the Owner agrees, in consideration of the further provisions of this Agreement and subject to the adjustments hereinafter provided, to accept such sums when paid * * * as the just compensation to which the Owner is entitled by law for the title to or the use of, as the case may be, the vessels named above, and in full and complete accord and satisfaction of any and all claims of whatsoever nature for just compensation or otherwise now or hereafter in any way arising out of the above mentioned requisitions, and the Owner thereupon forever releases and discharges the Administrator, the United States of America, and its agencies and instrumentalities from any and all liabilities of whatsoever nature upon or with respect to any such claims."

Plaintiffs say that this article indicates that the contract was not to supplant the obligation to pay just compensation so long as it was executory, that the words "when paid" indicate that the obligation to pay just compensation was not discharged until the sums agreed upon were paid. This argument, however, is considerably weakened by the fact that the sums stipulated have already been paid and the ships agreed to be returned have in fact been returned; so, whatever may have been the situation prior to the payment of these sums and the return of the vessels, after their payment and return it would seem that they were accepted, as indeed the article expressly recites, "as the just compensation to which the Owner is entitled by law for the title to or the use of, as the case may be, the vessels named above and in full and complete accord and satisfaction of any and all claims of whatsoever nature for just compensation or otherwise now or hereafter in any way arising out of the above mentioned requisitions," sub-

ject, of course, to the making of the adjustments provided for.

Said sums were accepted as just compensation for the vessels "in consideration of the further provisions of this agreement and subject to the adjustments hereinafter provided." These further provisions and adjustments are set out in the following articles.

Article 2 sets out that certain sums have been deducted by the Administrator from the sound value of the vessels as determined by him, for the cost of putting the vessels in sound condition. It was agreed that the owners might audit these amounts to determine their necessity and their correctness, and thereafter the Administrator agreed to adjust the amount that had been deducted, and to deposit with the Treasurer any amounts erroneously deducted.

It does not appear whether or not this has been done, but presumably it was done prior to redelivery of the vessels to plaintiffs.

Under article 2(b) the Administrator agreed to deposit with the Treasurer of the United States, and the owner agreed to accept "as the just compensation to which the owner is entitled by law for unbroached consumable stores, fresh water and bunkers on board the vessels at the time of taking, the market prices thereof current at the ports and at the time at which such vessels were respectively taken * * *."

This apparently has not been done.

As heretofore stated, 6 of the vessels which defendant requisitioned were sunk, leaving 6 in the hands of the administrator when the contract was entered into. As to these 6 it was agreed in article 3, " * * * the Owner consents, as to the vessels delivered to the Owner pursuant to this Agreement, to the conversion of the requisitions of title to requisitions of use, and the Administrator agree [sic] to take all steps necessary to effect such conversion."

These vessels were returned to the owners and the sums paid under the pro-

visions of article 1 were paid in part for just compensation for the use of these vessels.

Article 4 provided for the contingency of the failure to return some of the 6 vessels still in existence, but this is immaterial to our inquiry because all 6 were returned.

Under article 5(a) the Administrator agreed to deposit with the Treasurer of the United States a sum for "reconversion allowance," which was the cost of removing from the vessels implements of war placed thereon by the defendant, with the proviso that this amount should not exceed $578,888. This has not been done.

Under article 5(b) the Administrator agreed to deposit with the Treasurer of the United States a sum for the cost of repairs necessary to place the vessels in sound condition. This has not been done.

Under article 6(a) the owner agreed to pay for unbroached consumable stores, fresh water and bunkers on board the vessels at the time of delivery, and the Administrator agreed to deliver all spare parts on board the vessels at the time of requisition or their equivalent in cash. This has not been done.

The other articles of the contract are not material to our inquiry, except that article 11 provides for the payment of interest for delay in payment.

It thus appears that the major portion of the contract has been fully performed, the sums agreed on as just compensation for the vessels sunk have been paid; the vessels that were not sunk have been returned; and the sums agreed upon as just compensation for their use have been paid. The only thing unsettled is the amount due for reconversion allowance, repairs, spare parts, unbroached stores, fresh water, and bunkers. Defendant confesses liability for these items, but it has not paid for them because of the ruling of the Comptroller General's office, acting under the provisions of the Appropriations Act of July 31, 1947, 61 Stat. 697. That Act prohibited further disbursements for obligations incurred by the Maritime Commission unless the Comptroller General had found that they were properly incurred. He refused to make such a finding because of the inability of the Maritime Commission to certify that in determining the just compensation to be paid it had eliminated enhancement in value of the vessels after September 9, 1939, due to conditions caused by the emergency.

Notwithstanding this Act, and the ruling of the Comptroller General, and the consequent inability of the Maritime Commission to make further payments, we are of the opinion that we have authority to render judgment for the amounts agreed upon in the contract of May 10, 1946. When the contract between the parties before us was entered into, it was a valid, enforceable contract, and for failure to comply with its terms the defendant becomes liable for the resulting damages. Lynch v. United States, 292 U.S. 571, 54 S.Ct. 840, 78 L.Ed. 1434; Perry v. United States, 294 U.S. 330, 55 S.Ct. 432, 79 L.Ed. 912; Seatrain Lines, Inc. v. United States, 99 Ct.Cl. 272. It is not impossible for the contract to be fully performed; nor does the defendant refuse to perform it; instead, it consents to the entry of judgment for the amount due under the contract.

There can be no doubt about the fact that the parties entered into this contract in an attempt to settle the question of just compensation to be paid for the requisition of these vessels. It substituted for the liability to pay just compensation, new rights and liabilities; whereas title to all the vessels had been requisitioned, it was agreed under the contract that a requisition for use as to the vessels in existence on the date of the contract should be substituted for the requisition for title, and that these vessels should be returned to their former owners, and that compensation should be paid for the use, instead of for title. Indeed, it was the return of the vessels that induced plaintiffs to agree to the administrator's determination of just compensation.

■ Since the contract was entered into in settlement of the controversy and substituted new obligations for the old, we think it was agreed upon in satisfaction of the liability to pay just compensation, and that that liability was extinguished.

Defendant's excellent brief quotes from a number of authorities which hold that where a contract is entered into in settlement of a claim and it is intended that it should be in satisfaction of that claim, the old claim is extinguished. See 6 Williston on Contracts, sec. 1846; Restatement of the Law of Contracts, sec. 418; Moers v. Moers, 229 N.Y. 294, 128 N.E. 202, 14 A.L.R. 225; Archibald McNeil & Sons Co. v. United States, D.C., 1 F.2d 39, affirmed, 3 Cir., 10 F.2d 1016; J. Kahn & Co. v. Clark, 5 Cir., 178 F.2d 111; Union Central Life Ins. Co. of Cincinnati, Ohio v. Imsland, 8 Cir., 91 F.2d 365; Maryland Casualty Co. v. Cushing, 7 Cir., 171 F.2d 257; Matson Navigation Co. v. United States, 284 U.S. 352, 52 S. Ct. 162, 76 L.Ed. 336; M. & J. Tracy, Inc. v. United States, 111 F.Supp. 956, 125 Ct.Cl. 70, 74, certiorari denied 346 U.S. 854, 74 S.Ct. 68, 98 L.Ed. 368.

But if we assume that it was not intended to substitute the liabilities under the contract for the inchoate liability to pay just compensation, nevertheless, the contract defined the rights of the parties, so long as it was in effect. So long as that contract stands, recovery can be had only in accordance with its terms. In order for the plaintiff to recover anything other than amounts determined in accordance with the contract, the contract must be set aside; it must be rescinded. No other recovery can be had so long as that contract is in force.

■■ Wherever a contract is breached —it must be confessed that this contract has been breached by the delay in payment for the reconversion allowance, repairs, and stores—the injured party has the right to sue for damages for the breach or it may rescind the contract; but if we assume that plaintiffs have the right to rescind the contract for the failure to perform the relatively minor provisions not yet performed, they still cannot rescind until they have put the defendant in the *status quo ante,* or at least have offered to do so. Restatement of the Law of Contracts, sec. 349; see also the numerous cases cited in 12 American Jurisprudence, page 1031, note 1. This would require them to return the ships which the defendant redelivered to them, and require them to pay or to offer to pay, at least, compensation for their use from the time that they were delivered to them. Plaintiffs have not done this, nor have they offered to do so. Until this has been done, or until an offer to do this has been made, we do not think plaintiffs can rescind the contract. Until it has been rescinded, plaintiffs can only recover in accordance with its terms.

The cases holding that it is not necessary to rescind a contract of accord in order to sue on the original obligation are not applicable here, because this contract was entered into in settlement of the original obligation. It sets forth the way in which the original obligation is to be discharged. Until the contract is set aside, that obligation can only be discharged as the contract provides.

The compensation to be paid for the vessels sunk has been paid, and the compensation for the use of the vessels not sunk has been paid, except for the reconversion allowance and repairs to those vessels. It is clear that the obligation to pay just compensation for the vessels sunk has been discharged. As to them no action for just compensation can be maintained. The major portion of the sum agreed upon for the use of the vessels returned has been paid; shall the failure to pay the relatively minor amounts for reconversion allowance and repairs upset the agreement? We think not in view of defendant's expressed willingness to pay these amounts. McMillan v. American Suburban Corps., 136 Tenn. 53, 188 S.W. 615, L.R.A.1917B, 401.

Plaintiffs' compensation for the delay in payment is provided for in article 11

of the contract, which provides that interest at 3 percent per annum shall be paid on all sums as to which there has been delays in payment. This is the agreed measure of damages for the delay in payment.

We are of opinion that defendant's obligation to pay just compensation was supplanted by the obligations set out in the contract and that recovery can be had only in accordance with its terms.

It results that defendant's motion for summary judgment must be sustained, and that plaintiffs' first cause of action must be dismissed.

It is so ordered.

JONES, Chief Judge, and LARAMORE, MADDEN, and LITTLETON, Judges, concur.